Good morning. May it please the court, Mr. Chief Judge. My name is Jeff Hurd, and I represent the Honorable Craig Feifle, who is the presiding judge of South Dakota's 7th Judicial Circuit sitting in Rapid City. I will address you first this morning, followed by counsel for an endangered child is taken into custody. When an official takes custody on an emergency basis of a child in South Dakota, that child must either be returned within 48 hours or a petition for temporary custody has to be filed in the hearing held within 48 hours after that removal. This case tests those procedures. Plaintiffs sued under 1983 Judge of the 7th Circuit, the 7th Circuit, the state's attorney who represents the Department of Social Services at the 48-hour hearings, and the Department of Social Services. The district court denied motions to dismiss, granted motions for summary judgment to the plaintiff, entered a declaratory judgment and an injunction. We're asking the court to reverse the motion to dismiss, to reverse the summary judgment, to vacate the declaratory judgment and the injunction. Our brief... What would be the posture of the case? For purposes of Judge Feifle, the case would be over because the motion to dismiss would be granted on the basis that he is not a policymaker, which we believe is dispositive of those issues against him in this case. Throughout the litigation of this case, everyone has agreed that the district court needed to find that Judge Davis was a policymaker. Appellees, the plaintiffs agreed to that. That was urged at the district court by Judge Davis's counsel, and the district court so found that. The record then becomes a little confusing. If someone's rights are violated under color of state law, they can bring a 1983 action. They essentially can do this in one of two ways. They can sue the person who actually violated their rights for that person's conduct. If they do that, that conduct through respondeat superior vicarious liability does not attach to the entity under whose color of state law they were acting, the local body. Alternatively, you can also do them together, they're not exclusive, but the other way that can be done is to sue the actual body, the local governing body, but you can only do that, one, if you show that the constitutional deprivation was as a part of an official policy of that body, and you establish the official policy of that body by the acts of the final decision makers. What in the cases are all called the policymaker. Well, all along in this case, it has been the record became a little confusing, and they began to focus more on Judge Davis's actual rulings. However, we look at it, however, we cut it, there is one dispositive telling feature here, though, and that is Judge Fifeley was added to this case under Rule 25. Rule 25 of the Federal Rules of Civil Procedure only applies where the defendant is the or less, and the person sitting in that office isn't the real party in interest. So when that party changes, you simply substitute in the new person who holds that office. That's why Judge Fifeley is here in this case. Because of that, he is only here in that official capacity as the presiding judge of the Seventh Judicial Circuit. So if the presiding judge of the Seventh Judicial Circuit is not the final policymaker of the offending policies, then Judge Fifeley must be dismissed, and the district court's denial of the motion to dismiss should be reversed. So do we get to the, should we get to the merits of questions like that, or should this case go on jurisdictional questions like Rooker-Feldman and other younger abstention principles? We would prefer, Your Honor, that it be dealt with on the substantive reasons. Both Rooker and Younger could probably be cured if you found the right plaintiff. We are not unaware of, obviously, the effects of Shelby County in this case. We're not abandoning these arguments, but I will concede they are not our strongest arguments at this point. Other appellants will describe how the policymaker rules apply to their case. We don't believe it's a proper lawsuit to be brought. We also believe that there's a problem on the due process arguments. Nowhere in the country has anyone ever held that the levels of protections provided for in the district court's declaratory judgment were required within 48 hours of an emergency removal. To be clear, I believe all of those rights are required before you can terminate a parent's rights, finally. That's not an issue here. But the district court ordered that all of those rights, counsel, the right to confront and cross-examine, compulsory attendance of witnesses at the 48-hour hearing. Some of these children are having their 48-hour hearing within six hours of being picked up. They do 48-hour hearings on Monday and Thursday, and they all come in within that time period. Are there statistics in the record showing the speed of, or giving some sense of how quickly this happens? The Van Hunnick Affidavit, which is attached to the Fleming and Valenti Appendix, includes those numbers. It also includes the numbers of how quickly the children are actually returned. The district court said Davis was a policymaker. Yes. Okay. Do you want to address that? Sure. Sure. Number one, there's no case anywhere in the country that we're aware of that a child is a policymaker. Number two, the reasons given for being a policymaker are, number one, that he has the right to appoint to the abuse and neglect docket, which of the colleagues on the Seventh Circuit are going to have that. That does not allow him to control the rulings. Footnote 12 of the PEMBAR decision makes it pretty clear. The right to hire and fire is not the same as the right to set employment policies. He has, all of them are equal constitutional judges. Each of them are equally responsible for the judicial decisions that are made and the procedures that are operated in their own court. So what about Judge Davis's decisions in his own cases? Would those be policies? No. It has to be the official policy of the target entity. If it's only his own decisions, then he becomes the entity, which is not a policymaker case. Well, wait a minute. Why isn't he the entity since Fifeley was substituted for Davis? Davis was the entity for whom Fifeley was substituted. I'm sorry. Within their own, Judge Davis is still a circuit judge. He was before, Judge Fifeley was before. It is the Seventh Judicial Circuit that was sued by, through its presiding judge. So the question is not whether Judge Davis or Judge Fifeley make policy in their own courtroom for the cases that personally appear before them. That's like a Pulliam suit. That's like a Smith v. Pezzenti suit. The question is whether or not they set policy for all of the judges within the circuit. Well, I understand that's your theory as to what, but that's not how the district court looked at it. And you think it was wrong to say we can look at the judge's practices in his own courtroom as a policy? Because that's a, as I say, that's a different, that's a Pulliam type case. And then Judge, and then Judge Fifeley shouldn't have been substituted under Rule 25. The case should have proceeded against Judge Davis. Because it's an ex parte young individual capacity case. Correct. Correct, Your Honor. So, are you saying the suit was actually against the court, not against the judge? The complaint says both. But if it was against Judge Davis, he should not have been dismissed. He was dismissed out of the case simply because he ceased to be the presiding judge. If it was against Judge Fifeley, then Judge Fifeley should have been added from the very beginning. He shouldn't have substituted in simply because he became the presiding judge. Now, there's some mention in the plaintiff's reply brief about remanding to address this problem. Do you recall that? I do. What do you think about that? I don't believe so. Is that a little bit late for that? It is. And they cited to the Soltes lawsuit. But the problem there is that the district court failed to identify the policymaker. In this case, he did identify the policymaker. He simply did it in error. And we believe that that constitutes a reversible error. And he should have granted the motion to dismiss by finding that the presiding judge does not set the policies for how each judge within the circuit handles 48-hour hearings. And part of that also addresses some of the fact that all of these are subject to review. Cheyenne River Sioux Tribe v. Davis, they did review. In Ray A. O., the South Dakota Supreme Court does review the decisions, the procedural decisions of the individual judges within their courtrooms. Counsel, you're in your rebuttal. You can continue if you'd like or you can reserve. Thank you. Ms. Mann. Thank you. May it please the court, I'm Rebecca Mann and I represent State's Attorney Vargo. The district court erred when it assigned Monel liability to State's Attorney Vargo for failure to challenge Judge Davis' standing operating procedures. The district court blended the concepts of official policy liability with practice and custom liability and it erred in two ways. First, it determined that Judge Davis' standard operating procedures became the official policy of the State's Attorney's Office merely because Vargo failed to challenge them. And second, it determined that a custom and practice was created by acquiescing to another agency's standard operating procedure. Official policy liability requires a policy that is officially adopted and promulgated by the municipality. It requires a deliberate and conscious choice. Failure to challenge another agency's standard operating procedure does not adopt that standard operating procedure into an official policy. Inaction does not create official policy. It can create a practice or custom if it is permanent and well settled, but practice and custom liability requires subordinate employees because that liability is derived from delegation of policymaking authority to non-policymaking employees. In City of St. Louis v. Propernik, the court reaffirmed that a municipality cannot evade liability simply by delegating its policymaking authority to other employees. Instead, practice and custom liability can attach if there's acquiescence to a long-standing practice or custom. The policymaker, in essence, has delegated his authority to his employees by allowing them to engage in this widespread practice. But the acquiescence must be to subordinate employees because there is no delegation to another agency of policymaking authority and there's no control over another agency. It makes sense that acquiescing to your subordinate employees can create custom and practice liability because you have control over your subordinates. The policymaker can change how his employees are acting at any time by promulgating an official policy or prohibiting the widespread practice. But a state's attorney has no control over how a judge handles his hearings. He cannot promulgate an official policy that's going to change the judge's practices. He cannot prohibit the widespread practice of another agency. To establish Monell liability, a municipal policy or a custom or practice must be identified. Here there are no official policies or custom or practices that have been identified as the state's attorney embargo and he must be dismissed from the lawsuit. Thank you. What do you think about this Coleman case and the reasoning there that the police chief adopted the judicial order and therefore created a policy? Yeah, and the Coleman case was on a 12B6 review so the court was looking at whether or not the complaint had sufficient allegations to withstand the motion to dismiss and in the complaint there was an allegation that the final policymaker adopted the judge's ruling. So in that case it was an official policy because he had formally adopted it. In this case there is no formal adoption. It's mere acquiescence. You can't create an official policy through inaction but that's exactly what the district court said. And then it went on to say if you acquiesce to somebody else it creates a custom and practice and that is not how custom and practice liability is created. It must be through your own subordinate employees. Thank you Ms. Mann. Mr. Morris. Good morning, Your Honor. May it please the court, please excuse me if I sound like a foghorn. I represent Secretary of the Department of Social Services Lynn Valenti and the Regional Child Protection Service Manager Lisa Fleming. I parrot much of what Ms. Mann said but I take a little different approach to it. The 11th Amendment, Ms. Valenti and Ms. Fleming are state officials. The 11th Amendment bars suit against the state. Each of these individuals have been sued in their official capacity and under normal circumstances a suit against a state official in their official capacity is against the state and barred by the 11th Amendment. There's an exception and that's the ex parte young exception. When a plaintiff seeks prospective injunctive relief then the suit is not treated as an action against the state but the official because their actions have been illegal or wrong. So what we have here is the plaintiffs have invoked the ex parte exception to the 11th Amendment as to Valenti and Fleming. But they still must show that there was official action taken pursuant to unconstitutional policy or custom, that each of those officials was possessed final authority regarding the unconstitutional policy or custom was the moving force behind the constitutional deprivation. What happened in this case was way back when the complaint was filed, the core allegation was that each of the defendants was a policy maker. That was contested throughout the case. When the court ruled on the motion to dismiss, the court made the conclusory determination that everyone was a policy maker. Policy maker framework comes under Monell which applies to. Is that based on a concept of acquiescence that they've made no decisions but they've accepted the operation of someone else's choice? Exactly. What the court ultimately ruled was Judge Davis created six policies that were caused unconstitutional deprivation or violated federal statutory law. Then the court through Mr. Vargo and Ms. Fleming and Valenti, the court identified no custom policy or any official action that they were responsible for that caused any deprivation. But what they said is because you did not challenge the judge in terms of the procedures in his court, you did not attempt to change anything in his court, you acquiesced. Therefore you're as liable as he is. That was the court's decision. Thank you. Thank you, Mr. Morris. Mr. Pevar. Good morning, your honors. May it please the court, counsel. My name is Steven Pevar for the Plaintiffs Appellees. The defendants raised seven claims and I will try to cover all of them. I know that the policymaker issue is the single most contentious and I will spend most of my time on that. Fortunately, three of the seven can be addressed in 30 seconds each. Before I do anything else, however, I must review the essential facts of the case, all of them undisputed that the defendants are largely ignoring. These facts explain why the district court did what it did. This lawsuit was filed in 2013 and we examined four years worth of child custody cases from 2010 through 2013. During those four years, as the district court found, the defendants removed 823 Indian children from their homes. They then convened a hearing for the parents, these 48-hour hearings, to determine whether the court would grant the state's petition to keep those children in custody or return them to their parents. The state won 100% of those hearings. It would have been a miracle for a parent to have prevailed because all of those parents were denied rudimentary due process. They received none of the procedures this court held 50 years ago in El Segre are mandatory in child custody cases. They were not allowed to see the petition accusing them of abuse and neglect. They were not allowed to see the ICWA affidavit that contained the factual allegations against them. They were not allowed to present evidence. They were not allowed to confront the caseworker who signed the affidavit. And finally, the judge then made a decision based upon that ex parte evidence. Here are two more facts that I simply must raise at the outset. First, because the children in this case are Native American children, the Indian Child Welfare Act of 1978 applies. ICWA is the single most important law Congress has ever enacted to protect Indian children, Indian families, and Indian tribes. And the hearings that defendants conducted violated everything that ICWA stands for. Second, the district court convened a remedies hearing three years after the suit was filed in August 2016. During that hearing, Defendant Vargo's deputy, Roxanne Erickson, admitted, and this is 17 months after the summary judgment decision, that parents still were not being given the ALSEGRA mandatory due process procedures. Defendant Vargo, in fact, admitted and testified in that hearing that he saw no reason to provide any of those procedures. For instance, I asked Mr. Vargo, quote, do you believe that parents, whether Indian or non-Indian, have a constitutional right to receive the petition prior to the 48-hour hearing? Answer, no. I do not believe that rises to a level of a constitutional question. No wonder the district court issued the remedies it did. Counsel, among the states that have tribes where ICWA would be applicable, have there been any process at an initial emergency hearing? No, Your Honor. This is a case of first impression on that issue. Have you surveyed the law of the Eighth Circuit, the other six states, to see what is provided in those states' laws for procedures? And the amicus brief does so even more. And by statute, I think virtually every state provides procedures that South Dakota were not provided here, even under South Dakota law. Well, I guess what I'm getting at is if we were to affirm this judgment, does that mean that the laws of all the other six states are unconstitutional because they don't provide for a hearing within 48 hours that has all of these procedures? I don't know of a single other state's laws that allow or condone the procedures that applied here, and neither does South Dakota's. No, that's not the question. Okay. I'm not asking whether the other laws condone the procedures that were used here. The district court has ordered that certain procedures be adopted here. And the answer is no. As I read these other states' laws, they would not be in compliance with this order. Am I wrong about that? I don't know of any other state's laws. Does every other state have a hearing within 48 hours that has all the procedures that were ordered by the judge here, or would this require every other state in our circuit to change their laws to comply with what the district court here says is constitutionally required? What's critically important, Judge Colitane, is that the district court only relied upon state procedure. In South Dakota, it's 48 hours. The district— No, he constitutionalized the 48 hours and said the Constitution requires this hearing to be within 48 hours. Your Honor, that's not the way I read the decision, with all due respect. He used the South Dakota law that already requires 48 hours. In fact, the Indian Child Welfare Act has a 10-day— Well, then why isn't the order just wrong? Because the Constitution and the Indian law don't require it to be within 48 hours. It requires it to be done within, say, 10 days. The order is entirely correct because, under South Dakota law, the first hearing is in 48 hours. Yeah, but if the Constitution doesn't require that that hearing have all the procedures, because it doesn't have to be done that quickly, then why should the state law dictate when the procedures are implemented? The only thing that the district court did is to say, whenever this state holds its first hearing, these—and this is what the court said, the Eighth Circuit said, and now Sager as well—these are the procedures that must be provided. That's all it said. And that is consistent with every other state's laws. When you have your first hearing, these are the procedures that must be provided. Do you want to address the question whether you sued the correct judge in the correct capacity? Yes, it looks like I better get to that right away. I think it's an important question. Yes. What I'd like to do, since all of the defendants are raising policymaker claims, I will address the policymaker issue. Last year, this court, in Malone v. Hinman, explained the liability under Section 1983 with respect to policymakers, and Malone was authored by Chief Judge Smith and Judge Murphy was on that panel. The court defined policy for purposes of Section 1983, quoting an earlier Eighth Circuit case as, quote, an official policy, a deliberate choice, or a guiding principle or procedure made by the municipal official who has final authority regarding such matters. Next, the court then defined custom as being, among other things, quote, the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees. Let's begin with, let's apply that test here and begin with Mr. Vargo. Mr. Vargo is a policymaker for purposes of 1983 liability here. What makes this issue so straightforward is that Mr. Vargo admits that he and he alone created both of the policies that were challenging. He admits that he alone suddenly, and that he suddenly changed both of those policies. Mr. Vargo's first unconstitutional policy was his no PTC policy. The facts are undisputed because he has admitted this, that he made a deliberate choice not to give parents, in the 48-hour hearings, a copy of the petition for temporary custody, the PTC, that he was submitting to the court, accusing those parents of abuse and neglect. Even after the district courts decided, denied his motion to dismiss in 2014, citing Al Sager, he continued to withhold the PTC from parents for another four months. This was a persistent pattern of unconstitutional misconduct. Mr. Vargo's second unconstitutional policy was his no ICWA PTC policy. Here again, the facts are not in dispute because he admits them, that in May 14, he suddenly changed his mind about his first policy and said that parents could have the PTC after all. But the PTCs that he then gave them were constitutionally deficient under Al Sager because they didn't contain the proper standard of liability. The district court concluded in its summary judgment decision in 2015, that both of Mr. Vargo's policies violated the due process- Did the court call them Mr. Vargo's policies? I'm sorry? Did the court actually use the terminology Mr. Vargo's policy? Yes, he identified those policies and said that- Well, no, my question was, did the court say, identify them as Mr. Vargo's policies? Yes. I'm not sure if that's the precise language- Well, that's my question. Oh, I don't remember the- That's how you characterize them, but I want to- I'm asking you if the district court said that, or if that's how you're characterizing what the district court said. I would say that yes, that is what he said. I'm not sure if he used that- My impression is you're saying that's what the court meant, but my question to you was, what did the court say, the actual phrase the court used? Well, you have me there. All I know is that there's a section in there, Vargo, and he goes through these policies, and he identifies Mr. Vargo as the person who created- My impression had been Vargo was part of this acquiescence to the policy the judge was creating. Both, both. But he's the only one who had the authority to create them. The court spent at least half of the hearing, the remedies hearing, on this, and I was the lawyer who questioned Mr. Vargo on those policies. I mean, there's no question, but those were his policies, and I would have to look exactly at the decision, but there's no question that the district court identified those policies as Mr. Vargo's policies. Well, now the judge, of course, could have ordered that the petition be furnished to the parent. The state court or the federal court? Yes. The state court. Yes. I mean, it's a little odd to say that an attorney's litigating position is a policy, isn't it? I mean, if a prosecutor takes a position in court and it's wrong, then the judge would rule to the contrary and say it must be done differently. That might be true, Your Honor, with respect to activities occurring during the hearing, but this is something that should have occurred prior to the hearing and is now done prior to the hearing. I mean, they have implemented all of the district court's orders and things are going just fine. I mean, we've had this over a year now, close to two years, and things are going great, and now Mr. Vargo gives the parents a copy of the petition beforehand. DSS gives the ICWA affidavit beforehand. I acknowledge, in fact, this is one of the complaints we have against Judge Davis, is that he should have ensured that these defendants did do that, but it was their responsibility to do it. They're the only ones who create those documents, and they were handing them to the court beforehand, but withholding them from the parents. So everything's going fine now? I'm sorry? Everything's going fine now, in your view? I attended some of those hearings not too long ago, and there were some 10 hearings in one day. They last maybe 15, 20 minutes on average. The state calls one witness. The judge makes a decision. Everything is going fine, except for the fact that during the hearing, Prosecutor Vargo said that, in my opinion, there was nothing unconstitutional to begin with, and he sees nothing wrong with what happened, and we're obviously concerned that things will go back to the way they were. I mean, that was the quote that I read as one example, that he saw nothing wrong with what he was doing. Well, who is it Mr. Vargo's making policy for? Pennington County. And indeed, in his reply brief, and this is one of the things that you could understand why the district court had such consternation, is that he filed a motion to reconsider claiming, well, you didn't identify me as a county employee. And Judge Viken says, well, that board is on the frivolous. I said that you're the state's attorney, and under South Dakota statutory law and decisional law, a state's attorney can only be a county employee. He admits that in his reply brief. Mr. Vargo, and I have the quote, there is no dispute, this is on page 18 of his reply brief, there is no dispute that the state's attorney Vargo is a county official. The issue is- Isn't he representing the state of South Dakota in the child welfare context? Yes, that's right. That's right, as a county official. And he doesn't deny that. County officials do that all the time. They represent the state in a number of matters, but they don't morph into being a state employee. Well, you say state employee, but isn't it a little more complicated under that McMillian case as to whether the person is considered a state or county policymaker? I mean, in that case, as I understood it, the sheriff, I think it was a sheriff- Yes. His salary was paid locally, he was elected locally, but the court still said he was a state official for purposes of that litigation. So I think it's a little more complicated than just saying, well, he's a county employee and therefore he's a county official. The reason why it's not complicated here is that in McMillian, the official was claiming to be a state employee. Said, no, I may be a county employee, but in this instance, I was acting as a state official. They're not doing that. And they can't do that, they know they can't do that, and they're not doing it. There is- What is the argument about? What are we arguing about then? You don't understand either? Well, I am- You don't think he's taking the position that he was a state official? He's not. No. So what is he appealing then on that point? And that's why Judge Viken said this borders on the frivolous. You're not even claiming to be a state employee. All right. So the second thing that Mr. Varga- I need to get to Judge Feifle. And then if I have time, I'll come back because this is critically important. Yeah, I thought so, but you waited until the last two minutes, but go ahead. First and foremost, Judge Feifle is attempting to raise an issue on appeal that he did not raise in the district court. At no time did Judge Feifle claim that he personally was not a policymaker. And he raised this in his reply brief. He claims in his reply brief on page five, the district court erred in refusing to dismiss Judge Feifle. Judge Feifle did not seek dismissal. He did not seek summary judgment. The only argument that we have ever briefed, and the only argument that the district court ever addressed, was whether a presiding judge of the Seventh Circuit is a policymaker. Now in this court, he comes in and says, I personally am not a policymaker. I submitted at the last minute, or yesterday, a Rule 28J letter. Citing the fact that, number one, you can't raise issues on appeal. But number two, there is a well-settled set of legal principles to determine whether a successor, as Mr. Feifle is, is a policymaker who has taken over the position of his predecessor. And what those cases- But what policies are set by the presiding judge? I think that's one of the issues that's before us now. And you say you did argue- I think you just said the only thing you ever argued was that the presiding judge was a policymaker. Yes, that's correct. So if the presiding judge assigns the cases and so forth, that's a policy, I suppose. But how does that get you to the policies of the several individual judges, or the courtroom practices of the several individual judges? And this is under state law. It's section 12-6. I'm sorry, I left the paper there. But it's cited in the briefs. And under South Dakota law, the presiding judge has a duty to ensure the orderly administration, the orderly arrangement of cases, including child custody cases. I would like to think that- says, I don't agree with the way Judge Davis has been doing it, and foresees the way Judge Viken thinks it ought to be done, and does the hearings that way. Are you saying that that judge is forbidden to do it that way because Davis or Fifeley prefers a different approach? What I am saying, Your Honor, close to that. But we have to add this. If something is constitutionally required, I'll go out on a limb here. I would like to think that Chief Judge Smith, if he learned that panels on this court were only permitting the appellants to argue, and never the appellees, and that decisions from courts only reached one side or another, he would say that is not proper policy. We're not deciding the case- But I wouldn't be able to overrule panels. Your remedy would be the Supreme Court. It- under South Dakota law, however, and this- that's the critical difference. Under South Dakota law, the presiding judge does have a duty to ensure the orderly completion of cases. And if- Well, it's quite a ways from saying the orderly completion of cases to dictating rulings in other courtrooms. Again, it's not rulings. It's procedures. It's procedures- Procedural rulings. Let's put it that way. Procedures. Your Honor, if you do feel that, he does not have that authority, and this is what the district court struggled with. And the court said, if this remedy is ineffective, I am prepared to issue a broader remedy with respect to each individual judge. The court clearly found that these practices were unconstitutional. And he used South Dakota law, as he should have, to identify who that- the person is in charge of ensuring the orderly handling of these cases. At most, or at worst, the case should be remanded so that the district court could conduct that inquiry. All right. Thank you, Mr. Hurd. Time's expired. Excuse me, Mr. Povar. Mr. Hurd? Thank you, Your Honor. And first, let me begin. I was wrong before. It's the Erickson affidavit that says when the timing of the 48-hour hearings is. The Van Hunnick affidavit describes the time in which children are actually returned. First, the Allsager case. That had to do with what are the requirements for a termination, not a 48-hour initial emergency hearing. And in fact, the court in that case, this court adopted the district court decision in total. And it said there's a difference in the procedures that are required on the initial determination than there are on the initial emergency removal than there are on the ultimate termination. I think the case that's probably most on point, cited quite a bit in Napoli's brief, is that Gerstein v. Pugh case. It's a little bit different in this regard. It's about probable cause hearings, not emergency removals. It's about Fourth Amendment, not Fifth Amendment. But what it's in that case, both the district court and the appellate court held that a probable cause determination requires confrontation, appointment of counsel, cross-examination, and compulsory attendance of witnesses. And the Supreme Court said, no, it doesn't. So appellees have got to be able to explain why it is more important, why the state has a lower interest in protecting endangered children than it does in pretrial detention of criminal defendants. And yes, it absolutely constitutionalizes the 48-hour hearing. This court in Swipey's, and it's in other cases as well, has said that South Dakota's law, no state law expands or contracts the due process requirements. The fact that South Dakota has chosen to have a 48-hour hearing is of no constitutional importance when it comes to due process. The district court's decision that that 48-hour, excuse me, that 48-hour hearing had to contain all of these has now constitutionalized that for the entire Eighth Circuit, should you affirm. It has certainly constitutionalized it within the District of South Dakota at this point. The other problem with the argument is that I think they probably are now saying they approached this wrong. The district courts could have said, I'm ignoring the 48-hour hearing, but I think your advisory hearing is too far down the road. I think your dispositional hearing is too far down the road. So do your 48-hour hearing the way you want, but I think you have to get to these constitutional levels earlier than you are. That's not the plan that the plaintiffs took, and that's not what the district court decided. Are the judges in the circuit still taking the position that there's no need for disclosure of the petition or the affidavit and those sorts of things? That's a little bit of a mischaracterization. They'd never said, yes. They never said there was no need for it, but they did not provide it because of the logistics. They brought in the paper. Still declining to provide it because of the logistics. Are they? Yes. No, no. They found it's logistically possible to hand the document over to the other side. Yes. It wasn't logistically possible before, for some reason. No, it wasn't about possibility. It's so hard about just handing a document to the parent. Right, and it wasn't about the possibility of it. It had to do with more along the function. They haven't. Yes, they're complying with the declaratory judgment. You'll still find that that hasn't changed the outcome of these hearings. The most of the people are not taking advantage of the hearings because it's too early in the process. They don't want to put their client under oath within 48 hours because so many of these counts include. Extension of detention beyond 48 hours is still 100%. It's I guess I don't know that specific statistic, but before I came up here, I checked with my client and the broad statement was it has not led to any change in the outcome of any of these cases. Well, what's the significance of that? Because under Matthews, you only impose new burdens on a court when you find that there is a benefit to be gained from it. Well. It's not really in the record, I suppose, whether it is not. All right, thank you, Mr. Heard. Thank you very much for wishes to thank counsel for all the parties for your presence, the arguments you've provided to the court this morning, the briefing that you've submitted to very difficult case and we will take it seriously as we do them all and render decisions prompt as possible. Thank you.